And
Summers, J.
delivered the opinion of the court. In considering the first question, the court is necessarily led to the consideration of what constitutes the respective provinces of the judge and of the jury. Almost coeval with the institution of juries, we find the rule laid down, that as to questions of fact the jury shall answer, but in matters of law the judge shall decide; and the fitness of this rule has never been questioned; its application alone has occasioned the controversies which have arisen in this country and in England. It is not now the purpose of the court, to settle the many difficult and delicate questions that may arise in giving effect to the proper authority of each forum. The general principles governing this distribution of power, we think, are concisely and accurately stated, in the following terms—that the immediate and direct right of deciding questions of law, is entrusted to the judges; that in a jury, it is only incidental; and that in the exercise of this incidental right, the latter is not only placed under the superintendence of the former, but are in some degree controllable by them. It is sufficient for the present purpose, that we examine this superintending authority of the court with reference to the case under consideration. In the progress of a trial for a misdemeanour, either the defendant or the prosecutor may require the instructions of the court to the jury, on any question of law arising in the cause, whether directly or only collaterally affecting the issue; and, by particular direction of the statute, the court is required *763 to sign and seal any bill of exceptions that may be tendered to its opinion, provided the truth of the case be fairly stated. When instructions are given on incidental questions, although the cause may depend intirely on such decisions, as on the admissibility of documentary evidence, or the competency of witnesses to testify, the right of counsel to discuss before the jury the propriety of the admission or exclusion of the evidence, never has been asserted : the pure legal character of such questions leaves no pretext for arguing them before the jury. Can a different rule prevail, or different rights exist, when instructions are given on questions of law directly involved in the issue, and by which the facts proved are to be examined by the jury? We think not. It never could have been in the mind of the law maker, that, after a solemn adjudication of the court, and that made matter of record, the same question should be open for re-examination before an appellate tribunal, and at the same time open for re-consideration by the jury trying the cause. To admit this principle, as contended for by the defendant’s counsel in the circuit court, would be fraught with the most serious mischiefs. In securing to every citizen accused, a fair and impartial trial according to the law of the land, an appeal is given him to this court, for a just interpretation of the law by which ho is to bo tried, and ho is entitled to the operative benefit of such interpretation : but this may be lost to him, if equal rights are possessed by the prosecutor and the defendant in this particular, (which seems to us to be the case) and this new principle shall be interpolated in our criminal proceedings. If the superintending authority of the court be admitted, it follows as a necessary consequence that the right now claimed cannot be conceded: they are in conflict with each other : to admit the latter, is to deny the former, as to every beneficial purpose. A superintending authority in the court cannot exist, if its operation is to be referred to the discretion of the jury, and argument maybe addressed to them to shew that they ought to disregard it. If counsel have the right of appealing from *764 the court to the jury, on the interpretation of the law, the “ ' t right must equally exist of discussing before the jury, the force and authority of acts of assembly whenever any colourable ground may be 'supposed to exist; and the wisdom and constitutionality of legislative enactments, may thus become the topics of inquiry, whenever a jury is engaged in a criminal trial. That juries may take upon themselves the decision of both the law and the fact, is not questioned. Happily for us, the doctrine of attaint is unknown to our code, and our juries are exempt from any restraint on the honest exercise of their judgements. This power, however, extends also to civil causes; and it is unaffected by the prohibition of new trials in criminal cases, after a verdict of acquittal; since this distinction is not referable to the rights or the powers of juries, but has its foundation in principles intirely unconnected with them. In neither class of cases can the jury receive evidence of facts which it is their peculiar province to decide, without the court first passing upon its competency; and it would seem to follow, a fortiori, that they must be protected from misrepresentations of the law which is to be applied to such facts. We are aware that the principles here stated, and the reasons we have assigned, may be applied to capital cases, as well as prosecutions for misdemeanours: but, in cases affecting life or liberty, we think the practice of the courts, and the considerations on which it is founded, not only warrants the course, now generally pursued, of reserving instructions (except on collateral points) until the arguments to the jury are closed, but enjoins that order in conducting such trials.
This court is of opinion and doth decide, that counsel cannot legally argue against the opinion of the court, in a case like the present, or in any misdemeanour case. And this opinion renders an opinion on the second question unnecessary.*
*765 After this opinion had been announced, the court, in consequence of a suggestion from the bar, suspended its judgement, and ordered the cause to be continued, and at the same time requested the bar to aid the court with its views of the question.
Leigh, as amicus curia, submitted the following written argument to the court:
Here is another instance (alluding to the preceding case of Word v. The Commonwealth) of a question of most serious importance raised and referred to this the supreme criminal tribunal in the land, in a case the most trivial imaginable ; so trivial, that the party accused has not retained counsel to argue his cause in this forum, and obviously has little or no concern about its result. The proceeding has, to me, rather the air of mooting curious points of law, than of the grave argument and solemn adjudication of causes. It were easy, I should think, for the circuit courts, in all cases like this, to avoid, as according to my notions of propriety they ought carefully to avoid, the course that has been taken in the present case: and (beseeching the pardon for expressing the sentiment, if in the sense of the court it savour of presumption, for, indeed, it is dictated by no such unworthy feeling) I cannot forbear the expression of my earnest wish and hope, that an instance of the like kind may never be repeated. At the same time, in regard to this particular case, I feel personally the strongest assurance, that the adjournment of it is justly attributable to the spirit of indulgence of the judge of the circuit court towards the counsel of the party accused.
Looking only to the record, I am at a loss to understand, upon what ground it was supposed proper, regular or legal, to adjourn this case to this court.
The circuit court law (I Rev. Code, ch. 69. § 14. pp. 231,2.) provides, “that the said [circuit] courts, when a question new or difficult arises, may adjourn any matter of law to the general court; or any party thinking himself ag *766 grieved by the judgement of the said courts, may appeal thereupon as of right, or obtain a writ of error thereto from the court of appeals at the discretion of the court. And the said [circuit] courts, in any criminal case, may, with the consent of the party accused, adjourn a question of law to the general court, which may be there argued and decided, though such accused person be not present.” Now, it is quite plain, that the first sentence of this section, authorizing the adjournment to this court of questions new and difficult, at the pleasure of the circuit courts, relates wholly to civil cases ; to cases, namely, which if the circuit court decide instead of adjourning, the party thinking himself aggrieved, may appeal from the judgement as of right, or obtain a writ of error thereto from the court of appeals$ but, from a judgement in a criminal case, there can be no appeal as of right to any tribunal, nor has the court of appeals any jurisdiction to allow a writ of error. We must look for the authority of a circuit court to adjourn a criminal case to the general court, to the last sentence of the section; and there it is manifest, that the consent of the party accused is necessary to authorize the adjournment. In this case, no such consent is stated in the record. Therefore, this case, here, is coram non judice.
Again—I really cannot ascertain from the record, whether the questions adjourned in fact arose at the trial or not. The record states, that “ after instructions had been applied for by the attorney for the commonwealth,” to the purpose set forth, “ and an exception taken thereto by the defendant’s counsel,—the defendant’s counsel claimed the privilege of arguing before the jury, that the law was different from what it had been declared to be by the court, and by the general court.” It is not expressly slated, that the court had given the instruction, which the attorney for the commonwealth applied for; nor does it certainly appear, whether the defendant excepted to the instruction given by the court, or to the propriety of giving any instruction at all in that stage of the trial. Unless the instruction was in.fact *767 given, the question could not arise, whether the defendant’s counsel had a right to contest the correctness of the instruction before the jury. I should infer, from the expression, “ that the defendant’s counsel claimed the privilege of contending that the law was different from what it had been declared to be by the court, or by the general court,” that the court had given the instruction set forth as having been asked; and my mind certainly inclines to this interpretation of the record: but, on the other hand, from the second question adjourned to this court—“ whether the opinion of the court ought to be asked in any case where it may bo controverted before a jury”—it might be inferred, that the contest in the circuit court turned on the propriety of giving instructions at that stage of the trial. It does not appear with sufficient certainty, that any of the points adjourned arose at the trial: the maxim is, certa debet esse intentio et narratio, et cerium fundamentum, et certa res quce deducitur in judicium. Co. Litt. 303. a. But, apart from this view, it is absolutely certain, that, so far as the first of the adjourned questions extends beyond “a case like the present,” to “ any misdemeanour case,” this comprehensive question touching all misdemeanour cases, did not and could not arise in the present case. This will be rendered more manifest in the sequel.
Has it been decided by the general court, that if a person win more than twenty dollars in twenty-four hours, at the same place, it is immaterial whether he win it of one person or of several; that, if he win more than that sum of several, though not more than that sum of any one, he offends against the 6th section of the statute against gaming? If the court has so decided, I humbly submit, that the point deserves re-consideration. That 6th section of the statute (1 Rev. Code, ch. 147, p. 563.) provides, that “ if any person, by playing or betting at any game or wager whatsoever, at any time within the space of twenty-four hours, shall win or lose to another [in the singular] a greater sum or any thing of greater value than twenty dollars, the win *768 ner and loser [in the singular] shall be liable to pay” the penalty therein prescribed. The 3d section of the statute [Id. p. 562.) provides, that “ if any person or persons whatsoever [in the plural], at any time hereafter, within the space of twenty-four hours, by playing at any game or games whatsoever, or by betting on the sides or hands of such as do play at any game or games, shall lose to any one or more person or persons [in the plural] so playing or betting, the sum or value of seven dollars or more, in the whole, and shall pay or deliver the same or any part thereof, the person or persons [in the plural] so losing and paying or delivering the ■ same, shall be at. liberty, within three months then next following, to sue for and recover the money or goods so lost and paid or delivered, or any part thereof, from the respective winner or winners thereof [in the plural] with costs of suit” &c. The provision quoted from the 3rd section, is altogether retributive; that quoted from the 6th, is altogether punitive. It is plain' that the 6th section does not design to make all playing and betting criminal; it makes the criminality depend on the extent to which the playing and betting is carried; and the difference of its phraseology from that of the 3rd section is too marked to have been accidental. Does it, or may it, vary the extent or excess to which the playing or betting, inhibited by the 6th section, is carried, if the sum of more than twenty dollars be won of several persons, and not of one ? Is not the winning of that sum of one, indicative of a greater extent or excess of gaming, than the winning the same sum of several f If so, then the winning it of several, is a lesser degree of gaming, than that which the provision punishes—and that it is so, seems to me quite clear. If, for example, four persons sit down to whist, and cut for partners anew after each rubber; when one of them has lost twenty dollars to one other of them, it is more than probable that he has lost to the two others at least twenty dollars more. Therefore, it seems to me, that the offence which the 6th section of the statute was intended to punish, is that degree of gaming in *769 clicated by the winning of more than twenty dollars of one and the same person. The provision of the 29th section of the statute (Id. p. 570.) that the laws against gaming shall be interpreted as remedial and not as penal statutes, cannot, I apprehend, affect the point. If the statute make gaming criminal, only when carried to a certain degree; if it make the criminality depend upon the degree; to hold that gaming short of that degree is criminal, is to hold that to be criminal, which according to the law is innocent. If gaming to a certain degree only is inhibited by the statute as mischievous, gaming short of that degree, is not within the mis» chief which the statute intended to prevent.
The court will easily discern my solicitude, that it should avoid the question, which, when this case was under consideration at a former term, it was supposed proper to examine and to resolve; and it will as easily penetrate the motive of that solicitude. But though it is my wish that the court should avoid the decision of that very interesting question upon the present occasion, it is neither my design nor my wish to avoid the discussion of it.
The question I understand to be this—Whether on the trial before a jury of the general issue of guilty or not guilty, upon an indictment, information or presentment for a misdemeanour, the accused has a right to be heard by counsel before the jury, on any and every point of law, as well as of fact, involved in the issue, and, if in the course of the trial the court give an opinion upon a point of law whereof a general verdict will amount to a decision, to contest the correctness of such opinion in argument before the jury?
The general subject to which the question relates, is one that cannot have escaped the attention, or failed to exercise the reflection, of every counsel at all versed in criminal causes. It very early, and has very often engaged mine: and I bog leave to state, succinctly and candidly, the opinion, which I have always entertained on the subject, and which every new examination of it has more and more con *770 firmed—not because I have the presumption to think my individual opinion of any value or weight, but because I know no better, way of stating the propositions I propose to . maintain.
I hold, then, that in all criminal cases without exception, by the law of Virginia, the party accused having a right to trial by jury, lias also a right to make full defence by counsel before the jury: that the jury has hot merely the arbitrary power, but a strict legal right, to hear and to decide every question of law,'as well hs of fact, involved in the general issue of guilty or not guilty; and whatever question the jury has a right to decide, upon that question the party has a right to be heard by counsel before the jury : that it is also the undoubted right and the duty of the court, whenever in its opinion the occasion requires it, to charge, instruct or advise the jury, upon the law of the case, as ap-plicable to the facts in proof: that the jury owes the highest respect to the opinion or advice of the court touching the law of the case, and ought, in prudence, generally, to follow it as the surest guideyet théy are nowise bound to - give implicit faith to the court; for, if the jury do conscientiously differ from the-court as to the law, and.the opinion, of the court, if followed, would convict, and that of the jury, if persisted in, would acquit, the accused, it is the right and the most solemn duty of the jury to follow its own opinion of the law, and to .acquit; but the converse of this last position can never be right. It was part of the design of the institution of jury trial, to shield the accused from the court. And as to the precise question, Whether the accused, or (which is the same thing) his counsel, has a right to contest the opinion of the court on any point of law, given .to the jury at the trial; the resolution of this question .depends, I think, mainly if not intirely on' the course and order of proceeding. If, before the accused has had an opportunity to make full defence by counsel before the jury, the court, of its own accord, or at the instance of the counsel for the prosecution, instruct the jury as to the *771 law of the case, the court and prosecutor cannot, by thus anticipating the full defence, both as to law and fact, which the accused has the right of making by counsel before the jury, deprive him of the right to make such defence; and in such case, therefore, the counsel of the accused has a right to contest the correctness of the opinion of the court, in argument to the jury. But if, in any stage of the trial, the accused by his counsel pray the opinion of the-court on the law, or on any point of law applicable to the case, he cannot afterwards contest the correctness of the opinion before the jury. And if after the counsel for the prosecution and the counsel for the accused have been fully heard before the jury, upon the whole case, the court of its own accord (as it justly may) or at the instance of either party, or of the jury, .give its opinion to the jury, upon the questions of law raised and discussed, in the argument; the counsel for the accused, having been already fully heard, has no right to renew the debate, and to contest the correctness of the opinion of the court so given, before- the jury.
Let us first consider how stands the legal right of the accused, to mdkefull defence by counsel before the jury, in prosecutions for felony.
The common law denied counsel to the accused upon the general issue, on charges of felony or treason, but in cases of mere misdemeanour or any offence less than felony, always allowed the right of the party indicted to a full defence by counsel. 1 Chilt. crim. law, 409. The statute of 7 Will. 3. c. 3. § 1. enacted, that all persons accused of treason, such as works corruption of blood, should be admitted to make their full defence by counsel. In Virginia, at all times, before as well as since the revolution, all persons indicted of felony, have been allowed the same benefit of a full defence by counsel, as is given by the statute of William III. to persons indicted of treason; and the act of 1786, c. 57. (1 Rev. Code, ch. 169. § 27. p. 607.) directs, that the court shall allow every person charged with *772 treason or felony, counsel to assist him at his trial, if he desire it. The amendments to the constitution of the U. States (art. 6.) secures to the accused, in all criminal prosecutions, the right to have the assistance of counsel for their defence.
Now, I pray the court to look at any of the trials for treason' in England, since the provision of the statute of William III.! that persons accused of treason should be admitted to make their full defence by counsel, in order to see the constant, uniform, practical exposition'of this privilege of making full defence by counsel. Take, for instance, the trial of lord George Gordon in 1781., and the trial of Thomas Hardy in 1794—it will be found, that in both those cases, and in all others where any-such question of law could arise, the counsel for the crown and the counsel for the accused, discussed the doctrine of constructive treason- at large before the jury, and that the court forbore to- give its opinion upon the law, dntil the counsel had been fully heard upon it by the jury; that the counsel for the crown and for the prisoner, and the court itself, addressed all their arguments upon the law to the jury.
In judge Chase’s charge .to the jury, in the case of Fries (2 vol. Chase’s trial, append.) he said;—“It is the duty of the court to state to the jury their opinion of the law arising oh the facts;' but the jury are to decide, in the present and in all criminal cases, both the law and the facts, on their consideration of the whole case.” Again, in conclusion— “ If upon consideration of the whole matter (law as well as fact) you-are not fully satisfied without any doubt, that .the prisoner is guilty of the treason charged in the indictment,you will find him not guilty : but if, upon the consideration of the whole matter (law as well as fact) you are convinced that the prisoner is-guilty of the treasón charged in the indictment, you will find him guilty.” The history of this charge in the case of Fries, deserves to be recalled to memory.- Nobody now doubts that the charge stated the law of treason with perfect correctness; nobody, I believe, ever *773 entertained any serious doubt of it. But the judge prepared the charge, before the trial commenced; and made out three copies of it, one of which he handed to the counsel for the U. States, one to the counsel for the prisoner, and the other was intended to be delivered to the jury. It was no otherwise published: it was not read from the bench. The prisoner’s counsel, justly offended at this attempt to anticipate the prisoner’s right to make full defence by counsel before the jury, withdrew from the cause. The court, on the next day, sensible of its error, made the fullest retraction, and urged them to proceed in the defence, offering to allow them the utmost latitude of argument upon the law, before the jury. The counsel complained, that the court had prejudged the case; in other words, had formed and written its opinion, before they had been heard on the law, before the jury; for they declared, they had no intention to argue the law of the case before the court. And for forming this opinion, and signifying that ho had formed it, before the prisoner had had the opportunity of making his full defence, upon the law as well as the facts of the case, before the jury, judge Chase was impeached.
The court will also recollect the numerous cases that have occurred, of trials before each and every judge upon the bench, in cases of felony, in which the prisoner’s counsel have entered at large into the whole law of the case, before the jury; and the jury has retired without a word said by the court upon the subject.
I do not see, that more conclusive authority can be desired, to shew the correctness of my general view of the law upon the subject, so far as it relates to the relative powers and duties of the court and of the jury, and the rights of the accused and his counsel, in cases of prosecutions for felony. In the opinion delivered by this court, in the present case, at a former term, the correctness of the proposition I am now maintaining, is in a manner admitted; but the rights of the accused are there placed on wrong ground, and ground too, which strikes me as very precarious and *774 unsatisfactory. The court said—“ We are aware, that the principles here stated, and the reasons we have assigned, may be applied to capital cases, as well as to prosecutions for misdemeanours: but in cases affecting life or liberty, we think the -practice of the courts-and the considerations on which it is founded, not only warrant the course now generally pursued, of reserving instructions (except on collateral points) until 'the arguments to the jury are closed, but enjoin that order in conducting such trials.” I contend, that' the right of the accused in cases of prpsecutions for felony, to moke full defence by counsel before the jury, upon the law as- well as the facts of the case,, rests on the firm basis of law; on the same basis, on which rests the right to trial by jury: and I cannot be content, that it should be placed on the ground of mere practice, and a practice too, which stands reproved by the reasoning of the court- in cases of misdemeanour, and this reasoning declared to be equally applicable to both cases. And where* I beg leave most respectfully to ask, has the practice of the courts of justice, alluded to in the opinion, prevailéd ? Certainly in no court with the proceedings of which I have ever been conversant. The práctice has been,-that the court abstains from giving any charge to' the jury, either' before the argument of counsel begins or- after it is closed, unless desired to do so.
' Is there any difference between the legal powers and rights of. juries', and the legal rights of the accused arid his counsel, in cases of misdemeanour, and in cases of felony % I nnust, -in the first place, repeat the passage before cited from 1- Chitt. crim. law, p. 409. that, while the common law denied the benefit of counsel upon the general issue, on indictments for felony, in cases of mere misdemeanours, or any offences less than felony, it does not appear, that the right of the party indicted to a full defence by advocates, has ever been disputed. The distinction contended' for, is a reversal of the principle of the common law : and by what statute of Virginia, by what precedents, by what approved and established practice of our courts, can a distinction so anomalous be justified ?
*775 In the trial of Calender for a libel, before the circuit court of the U. States for the district of Virginia, in May 1800, Mr. Wirt, of counsel for the accused, contended, that he had a right to argue the constitutionality of the sedition law before the jury. Mr. Nicholas, in his evidence given at the trial of judge Chase, gives this account of what passed on that occasion—“ Mr. Wirt then addressed the court. He said he had not considered the case elaborately; that it appeared to him so clearly that the jury had the right contended for, that he did not imagine it required any great research to prove it. .He then proceeded to state, that it was certainly the right of the jury, to consider of and determine both law and fact: Mr. Chase here remarked, that Mr. Wirt need not give himself trouble on that point— we all know, said he, that the jury have a right to decide the law. Mr. Wirt then said, he supposed it equally clear, that the constitution is the law: yes, sir, said Mr. Chase, the supreme law. If then, said Mr. Wirt, the jury have a right to decide on the law, and if the constitution is the law, it follows, syllogistically, that they have a right to decide on the constitutionality of the law in question. A non sequitur, said judge Chase. Here Mr. Wirt sat down.” Thus, the- opinion of judge Chase is clearly expressed, against this distinction which has been asserted between trials for misdemeanours and trials for felonies. And though lie would not allow counsel to argue the Constitutionality of the sedition law before the jury, he offered to hear any argument addressed to the court, to prove the right of the jury, to consider and try the question of constitutionality. See 1 vol. Chase’s trial, p. 188.
In England, there was an anomalous doctrine, touching cases of libel, acknowledged to be applicable to no other cases whatever—that, in a trial for a libel, the sole' province of the jury was to find the fact of publication, and the truth of the innuendos; that the jury had no right to inquire into the guilt or innocence of the author’s intentions, or into the question whether the paper prosecuted was libellous or not j *776 that a verdict of guilty, left those point's undecided—because these were questions of law, which it belonged to the court to decide upon the record. This doctrine has been clearly traced up to the days of lord chief justice Holt. And yet, long before the declaratory act of 32 Geo. III. c. 60. by which the doctrine was exploded, it was the constant practice of the counsel for the accused in cases of libel, to argue the points, which the courts had uniformly held to be points of law, and as uniformly instructed the juries that they were points they had no right to inquire into; and, moreover, to argue before the jury, that it was their province 'to decide those very points. I need only to refer to Mr. Er shine’s defence of The Dean of St. Asaph. I am quite sure, there is not a single instance of counsel pursuing this co'urseof argument, being interrupted by the court, or of the counsel for the crown attempting to forestal the argument, by praying an instruction from the court.
. I confess myself wholly at a loss for any reason for this distinction, which admits the right of the accused to make full defence by counsel before the jury, both as to law and fact, in cases of felony, and denies the same right to a person accused of misdemeanours. There are many misdemeanours .which are more heinous crimes, and punished with greater severity, than many felonies. Libel, riot,' conspiracy, perjury and subornation of perjury, bribery and corruption, • assaults with intent to maim, rob, ravish or murder; all these are only misdemeanours, though they are punishable with fine at the discretion of a jury, and imprisonment at the discretion of the court. The keeping and exhibiting of A. B. C. or E. O. tables, &c. is no more than a misdemeanour; and yet it is, or lately was, punishable by imprisonment in the penitentiary, as well as by fine. The persons employed in carrying the mail, or in the post offices, who shall purloin money from a letter, are, by the laws of the U. States, guilty only of a misdemeanour; yet they are punishable with ten years imprisonment.
*777 A distinction lias sometimes been attempted between the power of the jury, and the right of the jury, to decide the law as well as the/act, in criminal cases; a distinction, which my mind has never been capable of comprehending. The question is, whether the jury, as a judicial tribunal, be competent to the decision of the law ? If the jury be incompetent to decide the law, it is immaterial whether they decide it right or wrong, according or contrary to the opinion of the court; their fault consists in the usurpation of a power which does not belong to them, and their opinion is a mere nullity. If they be competent to decide the law, the very definition of competency is a rightful legal power of judicature.
If any doubt shall remain on the subject of the right of juries, in all criminal cases, to decide the whole case, law as well as fact, either according or contrary to the opinion of the court, I think that doubt cannot fail to be removed by the argument of Mr. Erskine, on the motion for the new trial, in the case of The Dean of St. Asaph, 21 Howell’s St. Tri. 971. That argument turns on the very points we are considering; and it was universally allowed to be conclusive, in regard to all cases but trials for libel, as to which there existed that peculiar doctrine before stated.
If a person accused of misdemeanour have an undoubted right to make full defence by counsel before the jury, and if the jury be undoubtedly competent to decide the law, as well as the fact of the case; I really do not see how the inference can be resisted, that the counsel have a right to discuss before the jury every question of whatever nature, which the jury has a right to decide. And to mo it seems, that the principle holds good in all criminal cases'—murder and potty larceny—the most aggrevated misdemeanour punishable by forfeiture and imprisonment, and the most petty, punishable by pecuniary penalty. The difference in the degree of the punishment cannot change the nature of the trial; nor restrain either the legal power of the jury, or the *778 right of the accused to make full defence by counsel, as to the whole case, law and fact.
It is competent to a jury trying the general issue in a civil case, to find directly against the opinion of the court upon the law of it. At common law the jury might be attainted, for such a false verdict at the suit of the party injured; but no attaint ever lay for the crown against a jury finding a verdict of acquittal in a criminal case—this is acknowledged by Lord Mansfield, 21 How. St. Tri. 985. According to the modern practice, in civil cases, the court corrects the error of the jury, by granting a new trial; but if a jury find a verdict of acquittal in any criminal case, there can be no new trial granted, however contrary the verdict may he to the law or to the evidence.
It is an established rule, in all our courts of justice, not to allow counsel to contest the correctness of an opinion of the court upon a point of law, 'given in the course of the trial of any civil case : and without doubt, the rule is correct. For, the court may grant a new trial, if the obstinacy'or opiniativeness of the jury lead them to find against its instruction upon the law; and to allow argument to induce the jury to do a vain thing, were only to countenance the prolongation of controversy, without benefit to either party, and to the injury of both, as it necessarily increases the expense of litigation; The party against whom the judgement of the court is given, in a civil case, may appeal of right to a superiour tribunal, where the judgement will be reviewed; in no criminal case, can-the accused,-if the judgement of the court which tries his cause, be against him, appeal without assigning error. Besides, the practice has always prevailed in Virginia, and is now firmly established, for the courts, in civil cases, to abstain from giving charges to the jury, summing up the evidence, and explaining the law, after the argument of counsel js closed; and, instead of such charges, which counsel have no where been allowed to controvert before the jury, our courts give instructions, in the progress of the trial, if prayed, on the *779 points of law as they arise; and such instructions ought no more to be open to contest, than the charges to the jury, for which they have been substituted.
Prolix as this argument may seem, I have excluded from it, for the sake of brevity, many topics which I thought pertinent and just.
The attorney general also gave the court his opinion on the case, and the reasons of it: he held, that the first question adjourned ought to be decided in the negative.
The case having stood over till the present term, Bkockenbbougii, J. now delivered the unanimous resolution of the court, That this court had no jurisdiction to decide the questions adjourned to it. He said—This is a criminal prosecution against the defendant for unlawful gaming. The circuit court has adjourned to this court certain questions of law that aro.se there; but it does not appear by the record, that the adjournment was with the consent of the defendant. The statute provides, that “ the circuit courts, in any criminal case, may, with the consent of the person accused, adjourn a question of law to the general court.” Without such consent the case could not properly be adjourned, and this court has no jurisdiction of it. We have always decided, that such consent must appear by the record, and cannot be presumed. The case is to be remanded to the circuit court &c.

In this opinion, judges Johnston, Danid, Mien, Saunders, Dade, Boitldin, Field and Summers, concurred; judges Broclcenhrough and Semple, dissented.